UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

PRINCE D. SCOTT,

                                  Plaintiff,

                                                   18-cv-7203(VB)

   -against-

 WESTCHESTER COUNTY, et. al.

                                Defendants.
_____X

**MEMORANDUM OF LAW IN OPPOSITION TO COUNTY DEFENDANTS', N.P USZYNSKI AND CORRECT CARE SOLUTIONS'MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………..i

PRELIMINARY STATEMENT…………………………………………………………….1

STANDARD OF REVIEW…....……………………………..……………………….....…1

ARGUMENT…………….…..…………………...……………………...……………....…… 2

       Exhaustion of Administrative
       Remedies………………………………………………………………………3

       Failure to Protect Cause of Action…………………………………………..7

       Medical Indifference Claim……...………………………………..............……10

       Qualified Immunity………………………….……………………………………12

       Monell Claims………………………………………………………………..13

      CONCLUSION……………………………………………………………………14

## PRELIMINARY STATEMENT

Plaintiff PRINCE D. SCOTT initiated the current action pursuant to 42 U.S.C. § 1983

and common law.  Plaintiff seeks redress under the United States Constitution, for violations of

his innate rights to be free from failure to protect, failure to intervene and denial of medical care

stemming from an incident on or about January 22, 2017 at the Westchester County Department

of Corrections facility at Valhalla.  Plaintiffs respectfully submit this memorandum of law in

opposition to the COUNTY DEFENDANTS', N.P. USZYNSKI and CORRECT CARE

SOLUTIONS' instant motions pursuant to Rule 12 (b)(6) of the Federal Rules of Civil

Procedure.

## STANDARD OF REVIEW

The Court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in Plaintiff's favor.   To survive a motion to dismiss, a complaint must

contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 570 (2007); *See, Amar v. New York City Health & Hosps. Corp.*,

2015 U.S. Dist. LEXIS 77718, *8-10 (S.D.N.Y. June 15, 2015).

Rule 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A

claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. The pleading

standard of Rule 8 does not require "detailed factual allegations," but demands "more than labels

and conclusions"; "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

Prior to filing a responsive pleading, a defendant may move to dismiss a complaint

pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R.

Civ. P. 12(b)(6). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court

'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113

(2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court must

"accept all factual allegations in the complaint as true and draw all reasonable inferences in

plaintiff's favor." *In re Thelen LLP*, 736 F.3d 213, 218 (2d Cir. 2013). Nonetheless, courts "'are

not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550

U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S.

265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)); see *Quitoriano v. Raff & Becker, LLP*, 675

F. Supp. 2d 444, 448-49 (S.D.N.Y. 2009) ("At the outset of deciding a motion to dismiss, the

court may identify unsupported legal conclusions contained in the pleadings that are not entitled

to an assumption of truth."). *Radin v. Tun*, 2015 U.S. Dist. LEXIS 102095, *13-14 (E.D.N.Y.

July 17, 2015)

A district court may not consider matters outside the pleadings on a motion to dismiss.

See*: Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). "A complaint 'is deemed to

include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230 (2d Cir. 2016)

(quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)). Matters of which

the Court takes judicial notice are also not considered matters outside the pleadings. [*7] *Staehr*

2

*v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 426 (2d Cir. 2008). The Court may take judicial

notice of documents that are publicly available and whose accuracy cannot reasonably be

questioned. See: *Apotex Inc. v. Acorda Therapeutics, Inc.,* 823 F.3d 51, 60 (2d Cir. 2016).

(*Taylor v City of NY*, 2018 US Dist LEXIS 52308, at *6-7 [SDNY Mar. 27, 2018])

## ARGUMENT

### I.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

On this motion to dismiss, the moving defendants argue that plaintiff has failed to allege

exhaustion of his administrative remedies in this action.  As an initial matter, it is black letter law

that the burden to show a lack of exhaustion is on the moving defendants:

> Failure to exhaust under the PLRA is an affirmative defense: "[I]nmates are not required
> to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549
> U.S. at 216. A district court may only "dismiss a complaint for failure to exhaust
> administrative remedies if it is clear on the face of the complaint that the plaintiff did not
> satisfy the PLRA exhaustion requirement." Williams, 829 F.3d at 122. When a suit
> alleges multiple claims, the Court must analyze exhaustion on a claim-by-claim basis.
> See Jones v. Bock, 549 U.S. at 222 ("A typical PLRA suit with multiple claims . . . may
> combine a wide variety of discrete complaints, about interactions with guards, prison
> conditions, generally applicable rules, and so on, seeking different relief on each claim.
> There is no reason failure to exhaust on one necessarily affects any other."); Tartt v. City
> of New York, No. 12 Civ. 5405 (VEC), 2014 U.S. Dist. LEXIS 96808, 2014 WL
> 3702594, at *4 (S.D.N.Y. July 16, 2014) ("[C]ourts analyze exhaustion independently for
> each claim in a complaint . . . .").

(*Taylor v City of NY*, 2018 US Dist LEXIS 52308, at *8-9 [SDNY Mar. 27, 2018])

Moreover, defendants in their motion have failed to demonstrate that they had a viable

grievance procedure available to inmates.  As was held in (*Hubbs v Suffolk County Sheriff's*

*Dept.*, 788 F3d 54, 59 [2d Cir 2015]):

> Because failure to exhaust is an affirmative defense, *Giano v. Goord*, 380 F.3d 670, 675
> (2d Cir. 2004), defendants bear the initial burden of establishing, by pointing to "legally
> sufficient source[s]" such as statutes, regulations, or grievance procedures, that a
> grievance process exists and applies to the underlying dispute, *Mojias v. Johnson*, 351

3

F.3d 606, 610 (2d Cir. 2003); *see also Snider*, 199 F.3d at 114. If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact. *Hemphill*, 380 F.3d at 687-88.

Here, defendants completely fail to allege the existence of a grievance procedure available to the plaintiff.  There are no affidavits attached to the within motion specifying how the grievance procedure operates.  Defendants fail to allege that they provide pen and paper to the plaintiff inmate.  Defendants fail to specify which types of complaints are "grievable" and which are not. Defendants annex no documentation whatsoever regarding their grievance procedure. Defendants have failed to meet their burden of establishing their affirmative defense on this motion.  See, (*Murray v Palmer*, 2010 US Dist LEXIS 32014, at *15-22 [NDNY Mar. 31, 2010, No. 9:03-CV-1010 (GTS/GHL)]) (Defendant initially required to "adduce reliable evidence that administrative remedies were available to Plaintiff) See also,  (*Sease v Phillips*, 2008 US Dist LEXIS 60994, at *16 [SDNY July 24, 2008]) "Defendants have not produced any evidence to sustain their burden of proving that administrative remedies were in fact available to Sease."

Courts have held that when dealing with inmate assault issues, the grievance procedure is unavailable by design.  Courts have looked to the inmate Grievance Procedure Handbook for the particular facility to determine whether the type of claims brought are in effect greivable.  As was held in *Oates v City of NY*, 2004 US Dist LEXIS 15146, at *5-6 [SDNY Aug. 2, 2004]):

> Turning first to the claim that DOC personnel failed to protect the plaintiff from the assault that led to his injuries, defendants now candidly and commendably concede that this claim could not have been pursued under the DOC grievance procedures. Defendants now agree, "after careful review of the New York City Department of Correction Inmate Handbook," that claims arising from assault fall under an exception to the grievance procedures rendering complaints "pertaining to an alleged assault" non-grievable. (D. Br. 1; see also Rosencrantz Decl. Ex. G.) They therefore retract the portion of the briefs submitted in support of the original moving papers arguing that such claims were grievable, and concede that "because plaintiff would not necessarily be afforded the opportunity to grieve his inmate on inmate assault claim, this claim should not be dismissed for failure to file a grievance with DOC." (Id.)

Here, the Court does not have any information before it whether the particular facility where plaintiff was housed had a grievance procedure for an inmate on inmate assault claim. Moreover, the decision in *Oates* is not an isolated decision as several courts have held inmates on inmate assault claims are not grievable. See, (*Taylor v Swift*, 21 F Supp 3d 237, 242 [EDNY 2014]) ("There is no dispute that plaintiff's claim concerning the alleged May 2012 attack involves an "allegation *of* assault . . . by either staff or inmates." *See* Directive 3375R-A (emphasis added). The grievance policy designates inmate complaints involving such misconduct as "Non-Grievable").

Perhaps most importantly, plaintiff alleges that he was physically incapable of writing anything as his dominant arm was in a cast.  Plaintiff alleges in his complaint that he orally told officers that he wanted to grieve and Courts have deemed this oral grievance sufficient in circumstances such as this.  See, (*Ferguson v Bizzario*, 2010 US Dist LEXIS 112132, at *15-16 [SDNY Oct. 18, 2010]   ("The written IGP submitted to this Court, however, provides that the first step in the grievance process is that "within 5 calendar days" after the "incident giving rise to [the] grievance" "the inmate/detainee may file [a] grievance (only after exhausting the informal complaint process)." (IGP at 3.) There is no evidence by affidavit or otherwise that the written IGP or any information regarding a 5-day filing deadline measured from the date of the incident was provided to inmates, or specifically to this plaintiff.")  See also, (*Arnold v Westchester County*, 2010 US Dist LEXIS 90799, at *13-14 [SDNY Apr. 16, 2010]) ("The Westchester County Department of Corrections Inmate Rules and Regulations Handbook outlines the grievance procedure in place at Westchester County Jail. Inmate Rules and Regulations Handbook (annexed as Ex. D(2) to Rotini Decl.), at 6-7. Prior to filing a formal grievance, inmates must "exhaust all the steps in the informal complaint process." Id. at 6.)

5

Here, plaintiff specifically alleges that he made complaints to the available officers.  Considering plaintiff's physical inability to formally grieve, these informal grievances are sufficient.

While plaintiff did not have County Defendant's Exhibit C in his possession at the time of drafting the complaint and this Court therefore is not in a position to rely on same, Exhibit C entitled "Alarm or Incident Response Narrative Report" substantiates plaintiff's inability to formally grieve when it states "Inmate Scott was unable to provide a statement form due to his right arm was in a splint and he is right handed"  (See County Defendant's Exhibit C)  The Court is also directed to plaintiff's affidavit annexed hereto explaining his infirmity.  There can be no doubt that an inmate's physical inability to grieve allows for a well recognized exception to the grievance procedure.  As was held in *Galberth v Washington*, 2016 US Dist LEXIS 41478, at *18 [SDNY Mar. 29, 2016], where the plaintiff alleged mental illness as a "special circumstance" justifying non-compliance with the exhaustion requirement:

> However, the Second Circuit has explained that "special circumstances" include any circumstances that "understandably" prevent an inmate from complying with the prison grievance system. *Giano*, 380 F.3d at 678. It would be difficult to say that an inmate's failure to file a grievance is anything but "understandabl[e]" if it is caused by circumstances completely beyond the inmate's control, and those circumstances categorically prevent the inmate from exhausting administrative remedies. *See Bennett* v. *James*, 737 F. Supp. 2d 219, 227 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 816 (2d Cir. 2011) (summary order) (considering the possibility that an inmate's failure to file a grievance could be justified if the inmate were "physically or mentally unable to comply with the grievance process"); *Johnson* v. *N.Y.C. Dep't of Corr.*, No. 13 Civ. 6799 (CM), 2014 U.S. Dist. LEXIS 85444, 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) (same); *cf. Hale* v. *Rao*, 768 F. Supp. 2d 367, 377 (N.D.N.Y. 2011) (suggesting that, from a practical perspective, the plaintiff's illiteracy and low IQ rendered a prison grievance procedure unavailable).

While all of the above arguments apply equally to both the COUNTY DEFENDANTS as well as N.P USZYNSKI and CCS' arguments as to exhaustion, an additional issue exists as it applies to medical providers who provide contract work to a prison system, as defendants N.P

6

USZYNSKI and CCS' do.  As was held in (*Oates v City of NY*, 2004 US Dist LEXIS 15146, at

*11-12 [SDNY Aug. 2, 2004]):

> Defendants have not challenged plaintiff's factual allegations about who performed the challenged medical care. Rather, they counter that "the law is clear that claims of inadequate medical treatment and/or deliberate indifference, regardless of who the claim is against, are grievable." (D. Br. 2.) But a recent Second Circuit case against various employees of St. Barnabas Hospital, Timmons v. Pereiro, 88 Fed. Appx. 447, No. 03-7190, 2004 WL 322702, at *2 (2d Cir. Feb. 18, 2004) (summary order), suggests that the law is less clear than defendants think. In Timmons, the Second Circuit held that a district court had "improperly dismissed the claim [for inadequate medical care] because it did not identify an available and applicable administrative remedy that [plaintiff] failed to exhaust." Moreover, the Corporation Counsel had stipulated on appeal that the district court's dismissal of medical claims had been incorrect because claims against the hospital employees were not covered by the DOC grievance procedure. See 88 Fed. Appx. 447, [WL] at *1-*2. The Court vacated the district court's dismissal of plaintiff's claims and remanded with instructions to determine whether the plaintiff had exhausted administrative procedures available through the New York City Department of Health. Id.

In sum, none of the moving defendants have met their burden to demonstrate that plaintiff failed

to properly grieve the issues in this case.  Moreover, it is far from clear that plaintiff was required

to grieve his complaints under the applicable rules to the prison plaintiff was housed in.  The

contract medical providers, N.P USZYNSKI and CCS have failed to demonstrate that their

services are subject to the grievance procedure. Finally, the plaintiff has sufficiently alleged a

physical inability to comply with the grievance procedure due to his medical provision.  To the

extent the Court disagrees, the plaintiff requests an opportunity to conduct discovery on this

issue prior to any ruling as a matter of law.

## II.    FAILURE TO PROTECT CAUSE OF ACTION

The County defendants generally argue that plaintiff has failed to allege a cause of action

as defendants claim that placing plaintiff in "general population" was not unreasonably

dangerous to him or that the named defendants were not personally involved sufficient in the

decision to place plaintiff in general population.  Tellingly, the County defendants admit that

there was an order of protection in place as against one of plaintiff's attackers[1], however

defendants seek to somehow minimize the impact of this by arguing that when the order of

protection was issued against plaintiff's attacker, the attacker was not yet in their custody. (See

defendants' brief page 4)  It is not immediately clear what the import of defendants' argument is

other than to say, possibly, that the failure to segregate plaintiff from his attacker who he had a

prior Order of Protection against was an error, rather than a deliberate act.

However, defendants move prior to the initiation of discovery and therefore plaintiff does

not have the burden of deciphering defendants' intent or to specify each and every act which

defendants took which violated his rights.  That is a burden for another day.  Here, plaintiff's

complaint clearly and specifically alleges that the COUNTY DEFENDANTS including "Sgt.

Rene, Sgt. Meade, Comm. Spano, Dep. Comm. Diaz and A.W. Middleton" held daily meetings

discussing the dangers plaintiff faced and yet deliberately allowed plaintiff to be placed in the

same housing area as individuals that intended to do him harm, despite plaintiff's protest and the

orders of protections which they either knew or should have known were in place.  (See FAC,

paras 31-33).  Plaintiff has no further burden at this stage of the proceeding to identify how or

why defendants acted intentionally or recklessly without the benefit of discovery.  See, *Taylor v

City of NY*, 2018 US Dist LEXIS 52308, at *25 [SDNY Mar. 27, 2018] ("At this stage, plaintiff

has adequately, though not as specifically as might be desired, alleged the personal involvement

of Deputy Warden Cort and Captain Harper. See: *Brown*, 2017 U.S. Dist. LEXIS 58283, 2017

---

[1] With regards to the orders of protection that were in place at the time of alleged incident, plaintiff's First Amended
Complaint contains a factual error. The federal indictment involving the Goonies street gang was not filed until
sometime after the incident. The orders of protection that were in place at the time of the incident were issued by the
Criminal Court for the City of Mount Vernon. The case was later taken over by the U.S. Attorney's office, who then
secured the indictments underlying the cases noted in the First Amended Complaint. At that time, the orders of
protection which were initially issued by the Mt. Vernon Criminal Court were adopted and renewed by the Hon.
Judge Roman of the S.D.N.Y. They remain in place.

WL 1390678, at *10 (holding that allegations that defendants' actions caused plaintiff "to be

improperly placed in the general prison population" survives a motion to dismiss premised on

lack of personal involvement"). (*Brown v City of NY*, 2017 US Dist. LEXIS 58283, at *27-28

[SDNY Apr. 17, 2017, No. 13-cv-06912]) ("Brown says that Warden Suprenant and CO Tietjen

caused D.T. to be improperly placed in the general prison population, which jeopardized Brown's

health and safety. This allegation plausibly suggests that Warden Suprenant and CO Tietjen were

personally involved in a violation of Brown's rights under the Fourteenth Amendment.")

Moreover, defendants self-serving argument that transferring plaintiff into the hands of

the very person who plaintiff had an order of protection against was not an "unreasonable risk of

serious damage…" is another argument which is not properly decided at the motion to dismiss

stage. Here, plaintiff has sufficiently alleged that when he was brought to general population

against his will, he was almost immediately attacked by inmate Hughley as well as another

member of the "Goonies" gang. Again pointing to defendants Exhibit C, the Incident report

appears to completely support plaintiff's claims where it states "As observed on the Pen DVR

02, Camera 28 inmate Scott entered "A" block as a new admission. He was previously housed in

I-Block. Inmate Hughley was observed seated at a table, facing the "A" block entry slider door.

Inmate Hughley then got up and immediately ran over to Inmate Scott and with closed fist

punches striking him to head and body. Inmate Yarborough was on the inmate phone and he too

ran over to inmate Scott and struck him with closed fist punches to the head and body. Inmate

Hughley also used a dinner tray, striking inmate Scott two times. Inmate Scott fell to the floor

and while in a fetal, defenseless position both inmates continued striking and kicking him." (See

Defendants Exhibit C) Here, defendants' Exhibit appears to support plaintiff's contention that

placing him in the presence of the "Goonies" gang members, including inmate Hughley, was at

9

the very least a reckless decision as plaintiff appears to have been attacked, as he alleged,

immediately upon being presented into general population. (See FAC paras 39-41)

In sum, plaintiff has sufficiently alleged personal involvement at this stage of the

proceeding by alleging the names of the officers who participated in the decision making process

and the actual transfer of plaintiff into an area of the facility where they either knew or should

have known that he faced imminent danger and bodily harm.

### III.    THE MEDICAL INDIFFERENCE CLAIM

The COUNTY DEFENDANTS briefly argue that plaintiff's claim that defendant

RENE's instruction to defendant N.P.USZYNSKI to "write that there's nothing wrong with

him!" is insufficient, at the motion to dismiss stage, to allege sufficient personal involvement of

defendant RENE.  However, it is clear that issues of fact exist as to the level of control defendant

RENE maintains over the medical staff and the context of this statement.  Here, plaintiff alleges

an instruction by a supervisor to the medical staff to, in essence, downplay plaintiff's injuries and

therefore deliberately provide less medical attention than would be required for the injury

suffered. Plaintiff alleges that as a result of this intentional interference the following occurred:

"Without having received adequate medical attention, Plaintiff was then transferred to a

segregated area known as the 3-West "witness room" where he was placed by himself in a cell

apart from the rest of the general population of the jail." (FAC, para 48) And later, "Over the

next several weeks plaintiff made repeated requests for medical attention to WCDOC staff…all

of which were denied.  During that time the cast on his right arm began to emanate a foul odor."

(FAC, para. 54) And later plaintiff was brought to an infirmary six weeks later where it was

determined that "the cast on his arm had completely rotted." (FAC para. 55)  Here, plaintiff

alleges that this intentional disregard for his medical condition began with defendant RENE

instructing medical staff to downplay his injuries, injuries which were obvious to any reasonable

person.  Claims of medical indifference have passed the summary judgment stage on much less

than what is alleged here. As was held in *Samuels v Fischer*, 168 F Supp 3d 625, 649-650

[SDNY 2016]:

> *See Espinosa v. McCabe*, No. 10-CV-497, 2012 U.S. Dist. LEXIS 134717, 2012 WL
> 4108884, at *11 (N.D.N.Y. Aug. 28, 2012) (recommending the defendants' summary
> judgment motion be denied where the plaintiff asserted that, after being assaulted and
> losing consciousness, three defendants "abandoned him and failed to provide notification
> to the proper individuals that medical assistance was necessary" and two others moved
> the plaintiff, who was moaning in pain, to a cell where they left him), *adopted by* 2012
> U.S. Dist. LEXIS 134735, 2012 WL 4107908  [*650]  (N.D.N.Y. Sept. 19, 2012); *Scott
> v. Abate*, No. 93-CV-4589, 1995 U.S. Dist. LEXIS 21430, 1995 WL 591306, at *1
> (E.D.N.Y. Sept. 27, 1995) (finding that the plaintiff stated a claim against a defendant
> correction officer where the defendant failed to take the plaintiff to the clinic after an
> accident); *Hodge v. Coughlin*, No. 92-CV-622, 1994 U.S. Dist. LEXIS 13409, 1994 WL
> 519902, at *11 (S.D.N.Y. Sept. 22, 1994) (noting that "[t]o establish [a claim of
> deliberate indifference to serious medical needs on the part of nonmedical prison
> personnel] [a] plaintiff must prove that prison personnel intentionally delayed access to
> medical care when the inmate was in extreme pain and has made his medical problems
> known to the attendant prison personnel or that the inmate suffered a complete denial of
> medical treatment."), *aff'd*, 52 F.3d 310 (2d Cir. 1995). More specifically, Plaintiff
> adequately satisfies the objective prong that "the alleged deprivation of adequate medical
> care . . . be sufficiently serious," *Spavone*, 719 F.3d at 138, because he suffered hours of
> "excruciating pain" allegedly after a beating, (*see* Am. Compl. ¶¶ 19-21), which is
> objectively serious, *see, e.g., Reeder v. Artus*, No. 09-CV-575, 2010 U.S. Dist. LEXIS
> 94272, 2010 WL 3636138, at *9 (N.D.N.Y. July 27, 2010) (concluding in excessive force
> context that the plaintiff satisfied the objective requirement where he alleged that he
> suffered "excruciating pain in his fingers, face and neck; a swollen face, knee and fingers;
> black eyes; and a bloody ear"), *adopted by*, 2010 U.S. Dist. LEXIS 94013, 2010 WL
> 3636132 (N.D.N.Y. Sept. 9, 2010). Likewise, the subjective prong is fulfilled because, by
> knowing—whether from seeing his injuries, hearing about the beating, speaking with
> Nugent, or anything else—about Plaintiff's need to go to an outside medical facility but
> yet leaving him to suffer in a van for hours, these Defendants were "aware of a
> substantial risk [of] serious inmate harm" and yet "fail[ed] to act." *Nielsen*, 746 F.3d at
> 63. Therefore, Plaintiff has stated a claim against these Defendants under the Eighth
> Amendment."

It is clear that plaintiff has sufficiently alleged the personal involvement of defendant

RENE and defendant N.P.USZYNSKI in his complaint describing their specific involvement in

his medical treatment and their intentional disregard for his medical condition following the

11

January 22, 2017 incident.  Nothing more is required at this stage of this litigation. See, *Ellis v Guarino*, 2004 US Dist LEXIS 16748, at \*38 [SDNY Aug. 24, 2004]  citing *Chance,* 143 F.3d at 704 ("Rule 12 (b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.") (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

## IV.    QUALIFIED IMMUNITY

County defendants offer a boilerplate qualified immunity argument devoid of any meaningful specific contention in the context of the case at bar. Defendants offer no specific theory of immunity other than echoing the other arguments in their brief. As was held in *Villante v Vandyke*, 2008 US Dist LEXIS 3408, at \*9 [NDNY Jan. 15, 2008, No. 9:04-CV-759 (FJS/DRH)]):

> In 1986, the Supreme Court clearly established that, when a prison official stands by and watches an inmate attack another inmate, he has violated the constitutional rights of the inmate under attack. *See Davidson v. Cannon,* 474 U.S. 344, 348, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986) (citations omitted). Since Plaintiff has raised an issue of fact about whether Defendants stood by and allowed other inmates to attack him, the Court concludes that Defendants are not entitled to qualified immunity on this claim.

There is specific case law, which defendants fail to cite in their qualified immunity argument, that a plaintiff need not identify the specific names of the inmates he has a fear of, as long as he can identify the "source of the threats". As was held in *Williams v Marinelli*, 2017 US Dist LEXIS 21710, at \*42-43 [D Conn Feb. 8, 2017, No. 3:13-cv-1154 (MPS)]:

> As of 2010, it was "clearly established law" that correctional officials have a duty to protect prisoners from assaults by other inmates where they are aware of a substantial risk of such assaults. *Farmer*, 511 U.S. at 833, 837 (1994)("prison officials have a duty to protect prisoners from violence at the hands of other prisoners" and violate that duty when they "know[] of and disregard[] an excessive risk to inmate health or safety"); *Hayes*, 84 F.3d at 621 (2d Cir. 1996) (applying [\*43]  *Farmer* to reverse summary judgment for correctional official, where inmate had "identif[ied] the source of the threats" to the defendant official, even if he had not "identified his enemies by name.

12

Finally, the intentional character of the conduct alleged in plaintiff's denial of medical care claim

is sufficient to defeat a 12(b)(6) motion relying upon qualified immunity.  As was held in *Soto v*

*Rezkella*, 2007 US Dist LEXIS 54503, at *9-10 [SDNY July 26, 2007]:

> Dr. Rezkalla maintains that the facts in the present case are analogous to those in this
> Court's decision in *Palacio v. Ocasio*, No. 02 Civ. 6726, 2006 U.S. Dist. LEXIS 57339,
> 2006 WL 2372250 (S.D.N.Y. August 11, 2006), granting summary judgment against an
> inmate alleging a denial of medical treatment. *Palacio*, however, is clearly
> distinguishable. The plaintiff's claims in *Palacio* rested entirely upon a two-hour delay in
> treatment after an inmate-on-inmate assault and the treating physician's misdiagnosis of
> his broken jaw. 2006 U.S. Dist. LEXIS 57339, [WL] at *2. There was no direct evidence
> of indifference of the kind provided by Soto's testimony here. As a result, the plaintiff's
> allegations in *Palacio* rose to nothing more than an accusation of negligence; the
> evidence here is of an entirely different order. Since a reasonable trier of fact *may* find for
> Soto on the issue of deliberate indifference, summary judgment is not appropriate.

## V.    MONELL CLAIM

Finally, plaintiff has properly alleged an Monell claim, sufficient to withstand a motion

pursuant to 12(b)(6).  In fact, plaintiff has offered support for this claim by buttressing his

argument and citing to five other federal lawsuits which demonstrate a policy of deliberate

indifference to inmate safety in Westchester County Department of Corrections.  The County

defendants briefly argue that the plaintiff has not identified any policy, custom or practice

attributable to the County defendants in the First Amended Complaint. However, a cursory

review of paragraphs 84-90 of the First Amended Complaint reveals that plaintiff has identified a

policy whereby it is alleged that the COUNTY DEFENDANTS had a policy, custom or practice

of tolerating inmate assaults, such that they occur with predictable regularity.  In fact, plaintiff

has identified five separate federal claims alleging similar conduct on behalf of the COUNTY

DEFENDANTS.  Courts have acknowledged that defendants possess almost the entire spectrum

of discovery as to a Monell claim and therefore have been reluctant to dismiss Monell claims

13

without an adequate opportunity to conduct discovery as to the claim to precisely formulate the plaintiff's theory.  See, (*Sforza v City of NY*, 2009 US Dist LEXIS 27358, at \*32 [SDNY Mar. 31, 2009]) ("The City's argument that plaintiff alleges only one incident in support of her *Monell* claim, and that one incident is insufficient evidence of a City policy, is similarly unpersuasive. *Monell* liability may spring from a single violation, as long as the conduct causing the violation was undertaken pursuant to a City-wide custom, practice, or procedure. *See, e.g., DiSorbo v. Hoy*, 343 F.3d 172, 180-81 (2d Cir. 2003) (city liable under *Monell* for excessive force in simultaneous arrest of two sisters); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (county held liable under *Monell* following the retaliatory discharge of an employee). *Dwares*, cited by the City, involved a complaint containing insufficient allegations of a custom or practice. *Dwares*, 985 F.2d at 97, 101. Plaintiff's *Monell* claim will therefore not be dismissed in its entirety on grounds that it either fails to allege a policy or is based entirely on single incidents."  See also, *Sula v City of Watervliet*, 2006 US Dist LEXIS 76133, at \*15-16 [NDNY Oct. 19, 2006, No. 1:06-CV-316 (NAM/DRH)] ("The fifth cause of action in the complaint also alleges the existence of an official policy or custom which led to or aggravated plaintiff's injuries, by alleging that the City of Watervliet failed to provide proper training or protocol to police officers in investigating alleged "hate crimes." *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (claim for failure to train will trigger municipal liability where "the failure to train amounts to deliberate indifference to the rights" of those with whom the state actors will come into contact).

## VI.    CONCLUSION

In sum, plaintiff has sufficient alleged his claims to proceed through discovery.

14

Defendants have failed to maintain their burden as to their argument that plaintiff did not exhaust

his administrative remedies.  In addition, plaintiff has adequately alleged failure to protect,

failure to intervene, denial of medical care causes of action and *Monell* claims.  Plaintiff has

sufficient demonstrated personal involvement at this stage of the proceeding to withstand

dismissal of his well pled claims.  Plaintiff respectfully requests the Court deny defendants

motions in their entirety.


                                                        Respectfully Submitted,

Dated:  May 10, 2019
        White Plains, New York                          /s/

                                                        **_Alexis G. Padilla, Esq._**

15