UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PRINCE D. SCOTT,
                Plaintiff,

v.

WESTCHESTER COUNTY; MICHELE RENE, Sergeant; MEADE, Sergeant; LARRY VASQUEZ, Correction Officer; DWIGHT ALLEN, Correction Officer; JOSEPH K. SPANO, Commissioner; LEANDRO DIAZ, Deputy Commissioner; ERIC MIDDLETON, Assistant Warden; CORRECT CARE SOLUTIONS, LLC; and BOGUSLAWA USZYNSKI, Nurse Practitioner;
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 7203 (VB)

Briccetti, J.:

       Plaintiff Prince D. Scott brings claims against (i) the "County Defendants," consisting of Westchester County (the "County") as well as Sergeant ("Sgt.") Michele Rene, Sgt. Meade, Correction Officer ("C.O.") Larry Vasquez, C.O. Dwight Allen, Commissioner ("Comm'r") Joseph K. Spano, Deputy ("Dep.") Comm'r Leandro Diaz, and Assistant ("Asst.") Warden Eric Middleton; and (ii) the "CCS Defendants," consisting of Correct Care Solutions, LLC ("CCS"), and Nurse Practitioner ("N.P.") Boguslawa Uszynski. Plaintiff's claims include (i) a Section 1983 failure to protect claim against the individual County Defendants, (ii) a Section 1983 claim for conspiracy to violate plaintiff's constitutional rights and for deliberate indifference to serious medical needs against Sgt. Rene and N.P. Uszynski, (iii) a state law failure to protect claim against the individual County Defendants, (iv) a state law <u>respondeat superior</u> claim against the County and CCS, and (v) a municipal liability claim against the County.

Now pending are the County Defendants and CCS Defendants' motions to dismiss pursuant to Rule 12(b)(6). (Docs. ##44, 53).

For the following reasons, the motions are GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.  December 2016 Shooting

In December 2016, plaintiff was involved in a shooting in which members of a violent street gang called the Goonies wounded him several times. Plaintiff sustained broken bones in his right wrist and forearm. As a result of the incident, plaintiff was remanded to the custody of the Westchester County Department of Corrections ("WCDOC") at Westchester County Jail ("WCJ"). Plaintiff was treated for his injuries at WCJ and his right arm was placed in a fiberglass cast and sling. Plaintiff was then housed in WCJ's infirmary unit, where he was segregated from the jail's general population.

II.  Orders of Protection

In his amended complaint, plaintiff asserts the United States Attorney's Office for the Southern District of New York indicted approximately a dozen members of the Goonies for various violent offenses, including the December 2016 shooting. Moreover, plaintiff alleges United States District Judge Nelson S. Román issued numerous orders of protection in plaintiff's favor against various members of the Goonies, who were subsequently confined at WCJ.

2

Plaintiff also alleges that prior to January 13, 2017, the United States Marshals Service served copies of the orders of protection "on the WCDOC and defendants." (Doc. #29 ("Am. Compl.") ¶ 42).

However, in a footnote in plaintiff's opposition to the motions to dismiss, plaintiff states those allegations contain a "factual error." (Doc. #58 ("Pl. Br.") at 8 n.1). According to plaintiff's opposition:

> The federal indictment involving the Goonies street gang was not filed until sometime after the incident. The orders of protection that were in place at the time of the incident were issued by the Criminal Court for the City of Mount Vernon. The case was later taken over by the U.S. Attorney's office, who then secured the indictments underlying the cases noted in the First Amended Complaint. At that time, the orders of protection which were initially issued by the Mt. Vernon Criminal Court were adopted and renewed by the Hon. Judge Roman of the S.D.N.Y. They remain in place.

(Id.).

III. Assaults on Plaintiff

On January 13, 2017, plaintiff was in the WCJ booking department after returning from the United States District Court in White Plains when a member of the Goonies attacked plaintiff with a cane. Defendant Sgt. Meade interviewed plaintiff about the incident, and plaintiff informed Sgt. Meade the assailant was a member of the Goonies and that the Goonies were trying to kill him. In addition, according to the amended complaint, defendants Sgt. Rene, Sgt. Meade, Comm'r Spano, Dep. Comm'r Diaz, and Asst. Warden Middleton hold daily meetings in which they discuss, among other things, threats to inmate safety; plaintiff alleges at these meetings, defendants discussed the dangers the Goonies posed to plaintiff.

On January 20, 2017, Sgt. Rene called the infirmary and ordered defendants C.O. Vasquez and C.O. Allen to direct plaintiff to pack his belongings because he was being

3

transferred to a general population area.[1]  Plaintiff refused to comply and asked to speak with Sgt. Rene, telling C.O. Vasquez and C.O. Allen that he was not safe in the general population area because numerous members of the Goonies were present.  The correction officers communicated plaintiff's statements to Sgt. Rene, who told him that unless he could provide specific names of individuals from whom he needed to be kept separate, he would be transferred to general population—by force, if necessary.  Plaintiff then requested to be housed in protective custody, but Sgt. Rene denied his request.

Plaintiff was transferred to "A-Block" in the general population area.  (Am. Compl. ¶ 38).  Within minutes, he was attacked by two members of the Goonies, against one of whom plaintiff had an order of protection.  The attackers "beat him with their hands, fists and a metal object that was formed into a weapon," exacerbating plaintiff's pre-existing injuries and "causing the sutures at Plaintiff's surgical site to bust open."  (Id. ¶ 39).  Plaintiff also sustained bruised ribs and lacerations to his knees, legs, and arms.

Sgt. Rene and defendant N.P. Boguslawa Uszynski responded to the attack.  As N.P. Uszynski approached plaintiff, plaintiff heard Sgt. Rene say to N.P. Uszynski, "make sure you write that there's nothing wrong with him."  (Am. Compl. ¶ 46).  N.P. Uszynski responded, "okay." (Id.).  N.P. Uszkynski then refused to note on plaintiff's medical sheet plaintiff's injuries or the possibility that plaintiff needed to have the cast on his right arm removed because of the assault.

After the attack, plaintiff was transferred to a segregated witness room, but was not given immediate medical care.

---

[1] In the amended complaint, plaintiff inconsistently states the date of the alleged assault was January 20 and 22, 2017.  For purposes of this motion, the Court assumes the correct date of the alleged assault is January 20, 2017.

4

IV.     Attempts to File a Grievance and for Medical Care

Plaintiff immediately requested he be given assistance in filing a grievance, since he was incapable of filling out a grievance himself. His request was ignored.

On January 23, 2017, Sgt. Flokowski came to plaintiff's cell to show plaintiff the metal object that had been used to attack plaintiff. Plaintiff asked Sgt. Flokowski if he could arrange for plaintiff to be seen by medical staff and for help filing a grievance against Sgt. Rene and N.P. Uszynski. Sgt. Flokowski "promised to return but never did." (Am. Compl. ¶ 50).

Thereafter, plaintiff made repeated requests for assistance in filing a grievance, but he was repeatedly denied. He also made repeated requests for medical attention, all of which were denied. In addition, plaintiff was not produced for a previously-scheduled follow up visit with his surgeon related to his prior surgery.

On January 29, 2017, plaintiff was transferred to a protective custody area within WCJ. Plaintiff was placed on "Strict Protective Custody Status" and "Administrative Segregation." (Am. Compl. ¶ 53). Defendants Dep. Comm'r Diaz and Asst. Warden Middleton ordered plaintiff be confined for twenty-two hours per day and that he lose all privileges normally afforded inmates in protective custody and administrative segregation, including access to the law library.

Plaintiff made further requests for medical relief over the next several weeks, all of which were denied. In the meantime, the cast on his right arm "began to emanate a foul odor." (Am. Compl. ¶ 54).

After approximately six weeks, plaintiff was brought to the infirmary. The cast on his right arm had completely rotted. Plaintiff was transferred to Westchester Medical Center to have the cast removed.

Upon removal of the cast, doctors discovered plaintiff had developed a severe infection. Because of the infection, the surgical incisions on plaintiff's right wrist and right forearm failed to heal properly, resulting in permanent scarring.

## DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

II. Documents Relied Upon

A. Amended Complaint

Defendants argue the Court should disregard the amended complaint to the extent it conflicts with plaintiff's original complaint, especially the amended complaint's allegations regarding the exhaustion of plaintiff's administrative remedies.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977). In most cases, district courts in this Circuit "have considered prior inconsistent pleadings relevant, but held that they served only as controvertible, not conclusive admissions." Palm Beach Strategic Income, LP v. Salzman, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011), aff'd, 457 F. App'x 40 (2d Cir. 2012) (summary order). Although "there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading, the more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course." Barris v. Hamilton, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999).

This is not one of those rare occasions. Indeed, the amended complaint is consistent with the original complaint. Plaintiff alleged in his original complaint in response to a prompt to state reasons why he did not file a grievance: "I was in a sling and cast/splint as a result of being shot. The bullet shattered my bone (my right wrist) and I was unable to write or use my right hand (which is my dominant hand) at the time." (Doc. #2 ("Compl.") at 4). Moreover, in response to a prompt to state which, if any, officials plaintiff informed of his claim, plaintiff wrote: "I informed every officer, Sgt., and capt. who I came in contact with while in 3-West witness room (where I was placed after said incident) as well as while I was placed on 1 East and was told to

7

have a trustee write the grievance for me. By which time it was too late to file." (Id. at 4–5). In his amended complaint, plaintiff similarly alleges he was incapable of writing a grievance because of the injuries to his wrist and arm, and that plaintiff's requests for help filing a grievance were ignored.

Accordingly, the Court will not disregard plaintiff's allegations in the amended complaint.

B. Additional Documents

However, the Court does disregard documents both plaintiff and defendants improperly rely upon in support of and in opposition to the motions to dismiss.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court also may consider materials subject to judicial notice, but not for the truth of the matters asserted in those materials. Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

The CCS defendants argue in their reply brief that plaintiff incorporated by reference his medical sheet, which the CCS defendants argue shows N.P. Uszynski requested medical care on plaintiff's behalf.[3] The CCS defendants improperly raise this argument for the first time in their reply brief. See Playboy Enterprises, Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997)

---

[3] The CCS Defendants also argue in their reply brief the Court can take judicial notice of a contract between the County and a professional corporation identified as New York Correct Care Solutions Medical Services, P.C., which the CCS Defendants assert is available to the public. The CCS Defendants aver the contract shows CCS, which apparently was not a party to the contract, did not provide medical care at WCJ at the time of alleged acts in the amended complaint. The Court does not reach this issue because, as discussed infra at note 8, all claims against CCS are dismissed on other grounds.

("Arguments made for the first time in a reply brief need not be considered by a court.") (collecting cases). Therefore, the Court need not consider it. However, even if the CCS Defendants had properly raised this argument in their opening brief, the Court would reject it.

To incorporate a document by reference, a complaint "must make a clear, definite and substantial reference to the document[]." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). "A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." Williams v. Time Warner Inc., 440 F. App'x 7, 9 (2d Cir. 2011) (summary order).

Here, the CCS defendants rely on one line in plaintiff's amended complaint, in which plaintiff alleges N.P. Uszkynski refused to note plaintiff's injuries "on Plaintiff's Medical Sheet." (Am. Compl. ¶ 46). That is the very definition of a passing reference, and therefore insufficient to incorporate by reference plaintiff's medical sheet.

In addition, plaintiff submitted an affidavit in opposition to the motion to dismiss but provides no basis for the Court to consider it. (Doc. #58-1). The Court thus disregards the affidavit.

III.  Exhaustion of Administrative Remedies

Defendants argue the amended complaint should be dismissed because plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The Court disagrees.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The

9

exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). "Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints." Id. "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Id.

A prisoner's duty to exhaust can be excused only when the administrative remedy is unavailable, or put differently, "officially on the books [but] . . . not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016). The Supreme Court highlighted three circumstances in which the administrative remedy is unavailable: when the remedy (i) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) is "so opaque that it becomes, practically speaking, incapable of use . . . [or] no ordinary prisoner can discern or navigate it"; or (iii) allows "prison administrators [to] thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Williams v. Correction Officer Priatno, 829 F.3d at 123–24 (quoting Ross v. Blake, 136 S. Ct. at 1859–60).

It is not clear from the face of the amended complaint that administrative remedies were available to plaintiff. Plaintiff alleges in his amended complaint he was physically unable to write a grievance himself. And plaintiff alleges he repeatedly requested assistance writing a grievance but was either ignored or told someone would help him, and no one provided that help.

Those allegations plausibly suggest prison administrators thwarted plaintiff from taking advantage of the grievance system.

Accordingly, at this early stage of the case, the Court will not dismiss plaintiff's claims for failure to exhaust his administrative remedies.

IV. Failure to Protect Claim

The Court is also not persuaded by the County Defendants' argument that plaintiff fails to state a failure to protect claim.[4]

As an initial matter, it is unclear from the amended complaint whether he was a pretrial detainee or a convicted prisoner, and therefore whether to analyze plaintiff's deliberate indifference claims under the Eighth or Fourteenth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Although plaintiff alleges he was remanded to WCJ as a result of the December 2016 shooting, the County Defendants assert plaintiff was an alleged parole violator during the relevant time period.

"This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment." Reinoso-Delacruz v. Ruggerio, 2019 WL 2062434, at *2–3 (D. Conn. May 9, 2019). Nonetheless, some courts have held alleged probation violators are akin to pretrial detainees and thus analyzed their claims under the Due Process Clause of the Fourteenth Amendment. See id. (treating as a pretrial detainee a plaintiff who "was not found guilty of violating his probation until after" the alleged assault at issue in the case).

---

[4] The Court refers generally to the County Defendants throughout this section, but analyzes infra whether each County Defendant was personally involved in the alleged constitutional deprivations.

11

The County Defendants in their memorandum of law treat plaintiff's status as an alleged parole violator as equivalent to a pretrial detainee. The Court does the same here.

To plausibly allege a failure-to-protect claim under the Fourteenth Amendment, a plaintiff must satisfy an objective prong and a mens rea prong. To plead the objective prong, a plaintiff must plausibly allege "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." Darnell v. Pineiro, 849 F.3d at 29. This occurs when "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health." Id. at 30.

To adequately plead the objective prong, a plaintiff must plausibly allege a prison official exposed the plaintiff to conditions that "pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the [prison] conditions themselves must be evaluated in light of contemporary standards of decency." Darnell v. Pineiro, 849 F.3d at 30. In the failure-to-protect context, however, "[a] substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by a plaintiff regarding the altercation or a request by [a] plaintiff to be separated from the attacker." Rennalls v. Alfredo, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015).

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have

12

subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id. A plaintiff can sufficiently plead a failure-to-protect claim "when [the] inmate inform[ed] corrections officers about a specific fear of assault and [was] then assaulted." Beckles v. Bennett, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (collecting cases).

Plaintiff sufficiently alleges a failure to protect claim. Regarding the objective prong, plaintiff plausibly alleges the County Defendants exposed him to conditions that posed an unreasonable risk of serious damage to his future health. Plaintiff alleges within minutes of being placed into general population at WCJ, he was attacked by members of the Goonies, sustaining serious injuries and exacerbating old injuries. Moreover, plaintiff alleges he was previously attacked by a member of the Goonies and that he informed Sgt. Meade that members of the Goonies were trying to kill him.

Plaintiff's allegations also satisfy the mens rea prong. Plaintiff sufficiently alleges the County Defendants acted intentionally or recklessly failed to act with reasonable care despite prior knowledge of the threat to plaintiff's safety. Plaintiff alleges the County Defendants knew about the prior attack on plaintiff and that he informed Sgt. Meade that members of the Goonies were trying to kill him. Plaintiff further alleges there was an order of protection against one of plaintiff's assailants, and that the order of protection had been forwarded to WCDOC officials before the attack. In addition, plaintiff alleges when Sgt. Rene attempted to transfer plaintiff to the general population before the attack on him, he told her he was not safe in general population due to the presence of numerous members of the Goonies.[5]

---

[5] Plaintiff's assertion in his opposition that the orders of protection were issued by the City of Mounty Vernon Criminal Court rather than a United States federal court is immaterial:

The County Defendants argue plaintiff failed to warn WCDOC officials about the two specific inmates who ultimately attacked him. However, even in the Eighth Amendment context, "the issue is not whether [a plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [the plaintiff]." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 621 (2d Cir. 1996). Thus, "[a]lthough a prisoner's identification of his enemies is certainly relevant to the question of knowledge, it is not, necessarily, outcome determinative." Id.

The County Defendants also argue plaintiff could have been separated from the attackers within the general population. That argument is meritless. There is no requirement that plaintiff suggest to officials exactly how they should protect him from his potential attackers. If anything, the County Defendants' argument further supports inferring the County Defendants' actions were unreasonable: if plaintiff could have been separated within the general population, and the County Defendants could easily have done so, then the County Defendants' failure to do so is even more unreasonable.

Accordingly, the Court will not dismiss plaintiff's failure to protect claim for failure to state a claim.[6]

V.      Personal Involvement

The County Defendants argue none of the individual County Defendants, except for Sgt. Rene, was personally involved in the alleged failure to protect plaintiff, and that Sgt. Rene was not personally involved in the alleged deliberate indifference to plaintiff's serious medical needs.

---

plaintiff still avers the orders of protection were issued before the incident took place, and that plaintiff told the County Defendants about his fear of assault by the Goonies.

[6]     In addition, due to the ambiguity in plaintiff's status, the Court does not dismiss plaintiff's Eighth Amendment claims at this time.

14

Regarding plaintiff's failure to protect claim, the Court agrees as to defendants Comm'r Spano, Dep. Comm'r Diaz, and Asst. Warden Middleton, but disagrees as to defendants Sgt. Meade, C.O. Vasquez, and C.O. Allen. The Court also disagrees as to defendant Sgt. Rene's personal involvement in the deliberate indifference to plaintiff's serious medical needs.

To state a Section 1983 claim, plaintiff must allege a defendant's personal involvement in an alleged deprivation of plaintiff's constitutional rights. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013). In other words, plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[7] Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff fails sufficiently to allege Comm'r Spano, Dep. Comm'r Diaz, or Asst. Warden Middleton's personal involvement. Plaintiff merely alleges those defendants "discussed the

---

[7] After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). The Second Circuit has yet to resolve this dispute. Id.

15

dangers that Plaintiff faced with respect to the Goonies" at their daily meetings. (Am. Compl. ¶ 33). Plaintiff does not allege any of those defendants was aware plaintiff requested not to be placed in general population, that he had been previously attacked by a member of the Goonies, or of the orders of protection. Plaintiff also does not allege specifically when defendants discussed plaintiff's predicament—he merely alleges the conversation occurred at one of their daily meetings. In sum, plaintiff's allegation regarding those defendants' personal involvement is conclusory.

However, plaintiff sufficiently alleges Sgt. Meade, C.O. Vasquez, and C.O. Allen's personal involvement. Plaintiff alleges he informed Sgt. Meade that his assailant in the January 13, 2017, attack, was a member of the Goonies and was trying to kill him. Plaintiff also alleges he informed C.O. Vasquez and C.O. Allen he was not safe in general population because of the presence of numerous members of the Goonies, who had previously assaulted him.

As for Sgt. Rene's personal involvement in the alleged deliberate indifference to plaintiff's serious medical needs, plaintiff alleges Sgt. Rene told N.P. Uszynski to write that there was nothing wrong with plaintiff on plaintiff's medical sheet after plaintiff was attacked on January 20, 2017. That is sufficient to plead Sgt. Rene participated directly in the alleged constitutional violation.

Accordingly, plaintiff's failure to protect claim is dismissed as against Comm'r Spano, Dep. Comm'r Diaz, and Asst. Warden Middleton, but may proceed against Sgt. Rene, Sgt. Meade, C.O. Vasquez, and C.O. Allen. Plaintiff's deliberate indifference to serious medical needs claim may proceed against both Sgt. Rene and N.P. Uszynski.

VI.  Monell Claims

The County and CCS argue plaintiff fails to state claims against them pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees regarding the County. As for CCS, plaintiff did not assert a Monell claim against it, and therefore there is no claim to dismiss.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to assert a Section 1983 claim against the County, plaintiff must allege the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. See Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), . . . such claims nevertheless must meet the plausibility requirements of

[Bell Atlantic Corp. v. Twombly, 550 U.S. at 572], and [Ashcroft v. Iqbal, 556 U.S. at 678]." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. at *3. Thus, allegations that a defendant "acted pursuant to a policy, without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order). Moreover, to rely on lawsuits in alleging a municipal policy or custom, a plaintiff must provide factual details regarding the lawsuits. See Rivera v. Westchester County, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019).

Here, plaintiff fails plausibly to suggest the existence of a County policy or custom. Plaintiff lists five cases in his amended complaint that he alleges plausibly suggest "a policy of deliberate indifference to the safety of inmates in the custody of WCDOC." (Am. Compl. ¶ 90). Plaintiff does not provide any factual details about those lawsuits, nor does he explain how those lawsuits amount to a municipal policy or custom. Indeed, it is unclear whether those lawsuits have anything to do with the allegations in his amended complaint.

Elsewhere in the amended complaint, plaintiff alleges the County "had in effect policies, practices, and customs that allow for inmates in the custody of the WCDOC to be attacked and harmed by other inmates in situations that are preventable." (Am. Compl. ¶ 86). Plaintiff also alleges the County had a policy of inadequately training, supervising, and disciplining its correction officers. Those allegations are entirely conclusory.

Accordingly, plaintiff's Monell claims against the County is dismissed.[8]

---

8    As the County Defendants did not move to dismiss plaintiff's state law failure to protect claim, plaintiff's respondeat superior claim against the County may proceed. See L.B. v. Town of Chester, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983,

18

VII. Qualified Immunity

Finally, the County Defendants argue all remaining individual County Defendants are entitled to qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order). However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint." Id.

---

municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior."). However, plaintiff did not bring a state law failure to protect claim against N.P. Uszynski, and therefore plaintiff's respondeat superior claim against CCS, premised only on plaintiff's Section 1983 claim, is dismissed. Thus, there are no remaining claims against CCS.

Here, plaintiff sufficiently alleges the remaining individual County Defendants—Sgt. Rene, Sgt. Meade, C.O. Vasquez, and C.O. Allen—violated his Fourteenth Amendment rights, which were clearly established at the time, and that it was not objectively reasonable for those defendants to believe they could lawfully do so.

Accordingly, the remaining individual County Defendants are not entitled qualified immunity at this time.

## CONCLUSION

The motions to dismiss are GRANTED IN PART and DENIED IN PART.

Plaintiff's remaining claims include: (i) Section 1983 failure to protect against Sgt. Rene, Sgt. Meade, C.O. Vasquez, and C.O. Allen; (ii) Section 1983 deliberate indifference to serious medical needs and conspiracy against Sgt. Rene and N.P. Uszynski; (iii) failure to protect under state law against all the individual County Defendants; and (iv) a state law respondeat superior claim against the County based on the state law failure to protect claim.

The remaining defendants shall file their answers to the amended complaint by February 5, 2020.

The Clerk is instructed to (i) terminate defendant Correct Care Solutions, LLC; and (ii) terminate the motions (Docs. ##44, 53).

Dated: January 22, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge